```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PEOPLE FOR THE ETHICAL TREATMENT OF
ANIMALS,

                        Plaintiff,             03-CV-6312T

          v.                                   DECISION
                                               and ORDER
OUT FRONT PRODUCTIONS LLC, HOWIE
JACOBSON, CITY OF ROCHESTER, and
JEFF CAULKINS,

                        Defendants.
_____
```

## INTRODUCTION

Plaintiff, People for the Ethical Treatment of Animals ("PETA") brings this action pursuant to 42 U.S.C. § 1983 claiming that the defendants violated the organization's constitutional and civil rights in connection with the organization's sponsorship of a large, fiberglass elephant sculpture (the "PETA Elephant") decorated for public display as part of an event known as the "Animal Scramble." The event, which was organized and conducted by defendant Out Front Productions, involved the placement of over 100 decorated fiberglass animal sculptures throughout the Rochester, New York metropolitan area from May through September, 2003. Upon the completion of the event, the sculptures were auctioned off, with proceeds going to charity.

Plaintiff claims that the defendants violated its rights by failing to place its elephant in a timely manner at the location of its choosing: the War Memorial Auditorium in downtown Rochester ("the War Memorial"). Although the sculpture was eventually placed

at the War Memorial, plaintiff claims that its placement was delayed by one week so that the elephant would not be on display during a circus engagement at the War Memorial. Plaintiff alleges that its Constitutional rights to free speech, Due Process, and Equal Protection were violated by the defendants actions; that the defendants conspired to violate PETA's civil rights; that the defendants engaged in deceptive business practices; and that Out Front and defendant City of Rochester breached contracts with PETA.

Defendants Out Front and Howie Jacobson, ("Jacobson")(collectively "Out Front" or the "Out Front defendants") the Managing Partner of Out Front, move for summary judgment against the plaintiff on grounds that they are private actors, and therefore cannot be held liable to the plaintiff for alleged violations of its civil rights. The Out Front defendants further argue that even if they could be held liable under Section 1983, plaintiff has failed to state a cause of action against them because Out Front did not violate plaintiff's rights to Due Process, Equal Protection, or freedom of speech.

Defendant Jeff Calkins, an employee of defendant City of Rochester and the General Manager of the Arena at the War Memorial, (hereinafter referred to collectively as "the City defendants) also moves for summary judgment against the plaintiff on grounds that he played no role in the decision of when and where the PETA Elephant was to be placed, and that he is not a state actor and therefore can not be held liable for civil rights violations under 42 U.S.C. § 1983.

PETA cross-moves for partial summary judgment seeking a declaration that the moving defendants are state actors, and that they are liable to PETA for damages as a result of their violation of PETA's civil rights.

For the reasons set forth below, I grant the defendants' motions for summary judgment, and deny plaintiff's cross-motion for summary judgment.

## BACKGROUND

In 2002, defendant Howie Jacobson, the Managing Partner of Out Front Productions, a promotional services agency, conceived of and solicited participation in an "animal scramble" to take place in the Rochester, New York metropolitan area. The event involved the placement of several large fiberglass animal sculptures in public and private outdoor spaces for viewing by the general public during the summer months of 2003. The sculptures were sponsored by area businesses and organizations, and were painted and decorated by local and national artists. Upon the completion of the animal scramble, the sculptures were auctioned off for the benefit of several charities.

Plaintiff PETA decided to participate in the animal scramble, and in October, 2002, submitted an application to sponsor an elephant sculpture to be named "Elly Wanna Befree." The sponsored sculpture was to be depicted as a circus elephant suffering from inhumane treatment at the hands of circus operators. The PETA Elephant was to be painted with a blanket covering its back bearing the words: "The Circus is Coming: See Shackles, Bullhooks, Loneliness All Under the 'Big Top.'" PETA's application and design

were approved by Jacobson, and PETA paid the required sponsorship fee of $3,850.00.  Thereafter, PETA requested placement of its sculpture at the War Memorial.  Because placement of the sculptures was on a first-come first-served basis, PETA submitted its location request almost immediately after receiving the request form.  On February 24, 2003, PETA received email confirmation from Jillian Eddinger of Out Front productions that it had received its first choice of locations, and that its sculpture would be located at the War Memorial.

Within ten minutes of receiving the e-mail from Out Front confirming that the PETA Elephant would be placed at the War Memorial, Tamara Murphy ("Murphy") of PETA responded to Out Front thanking them for awarding PETA its first choice of locations. Murphy also asked for lead time prior to the final placement of the sculpture for purposes of attaching a shackle to the elephant's leg.  Eddinger forwarded PETA's request to Jacobson along with the comment "eeeeekkkkk . . . ."  Three hours later, Jacobson e-mailed Eddinger and informed her that PETA's elephant would not be placed at the War Memorial.  Although Jacobson made the decision not to allow the PETA elephant to be placed at the War Memorial on February 24, 2003, he did not communicate that decision to PETA until the last week of April, 2003.

According to Jacobson, the PETA Elephant was not placed at the War Memorial because PETA had made a design change to the sculpture, and because the change was not approved, the sculpture

was not considered for placement until the design was changed to the original, approved design, or to an alternate design that could be approved. The design change at issue involved the words that were inscribed on the blanket covering the elephant. PETA had originally proposed a design including the inscription: "The Circus is Coming: See Shackles, Bullhooks, Loneliness All Under the 'Big Top.'" PETA, however, in painting the sculpture, changed the wording on the blanket to: "Step right up, see shackles, bullhooks, whips at the circus." Jacobson, who was responsible for approving the designs of the animals in the Animal Scramble, stated that he could not approve of the change of the word "loneliness" to "whips" because it was a "radical" change, and the use of the word "whips" was too "aggressive." Although Jacobson and PETA eventually agreed to change the word "whips" on the new inscription back to "loneliness," Jacobson claims that by the time the new design was approved in March, 2003, the five available display spots at the War Memorial had already been assigned, and therefore, PETA's Elephant would not be placed there. Jacobson did not offer any explanation as to why PETA was informed on February 24, 2003 that it would receive a spot at the War Memorial, nor did he explain why PETA was not informed of his decision not to allow the PETA Elephant to be located there until late April, 2003.

In late April, 2003, Jacobson informed PETA that its Elephant would not be placed at the War Memorial, and instead, would be placed at the intersection of two State Routes in Farmington, New

York, a small community 27 miles southeast of Rochester in Ontario County. When PETA objected to the relocation of the sculpture, Jacobson stated that the five allocated spots at the War Memorial had already been taken, and produced a letter written by defendant Jeff Caulkins, the Manager of the Arena located at the War Memorial, which confirmed that all five spots had already been filled. Unbeknownst to PETA, Caulkins had supplied that letter pursuant to a request from Jacobson. After PETA threatened legal action and complained to the City of Rochester, the City mediated the dispute, and allowed a sixth exhibition space to be added to the War Memorial for the purpose of allowing the PETA Elephant to be displayed there.

According to the Animal Scramble promotional materials, the sculptures were to be placed in and around Rochester during the week of May 5, 2003. The promotional materials also made it clear, however, that all dates involving the event were subject to change. The sculptures that were placed at the War Memorial were not placed there until May 13, 2003. PETA claims that the sculptures were not placed there on or during the week of May 5, 2003 because a circus was scheduled to perform at the War Memorial Arena from May 7 to May 11, 2003, and the Arena Manager did not want the sculpture's anti-circus message displayed during that time. The defendants contend that the sculptures were not placed at the War Memorial until May 13, 2003 because access to site was closed as a result of the circus' operations, including setting up the circus, running

it, and breaking it down after the enagement.  Defendants further contend that none of the Animal Scramble participants received any guarantee as to when the animals would be placed at their designated locations.

## DISCUSSION

### I.   Plaintiff's Constitutional Claims

Plaintiff claims that the defendants violated its constitutional rights in several ways.  PETA alleges that the defendants violated and conspired to violate PETA's freedom of speech by failing to timely place the PETA Elephant at its chosen location because the defendants objected to the message conveyed by the PETA Elephant.  Plaintiff also contends that it was denied due process and equal protection on grounds that it was treated differently, and was subjected to harsher rules and requirements than other Animal Scramble sponsors because the defendants disagreed with the anti-circus message of the PETA Elephant.

42 U.S.C. § 1983 states in relevant part that "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C.A. § 1983 (1994).  To state a claim under § 1983, a plaintiff "must allege: (1) that the challenged conduct was attributable at least

in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993) (citations omitted). To satisfy the requirement of "acting under color of law," the plaintiff must establish that the defendant "exercised power `possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (<u>quoting</u>, <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941).

 A. <u>Plaintiff has failed to establish that the Out Front defendants were acting under color of State law</u>.

Assuming <u>arguendo</u> that plaintiff could establish that the Out Front defendants violated its constitutional rights, plaintiff has failed to establish that the Out Front defendants were acting under color of state law. There are three methods for determining whether or not a private party is a "state actor" for purposes of section 1983 liability. Specifically, a private party may be considered a state actor "(1) when there is a 'close nexus' between the private and state actors, (2) when the private activity is a product of 'state compulsion,' or (3) when the private activity is a 'public function'." <u>Turturro v. Continental Airlines</u>, 334 F.Supp.2d 383, 394 (S.D.N.Y. 2004). To establish the existence of state action under the "close nexus" test, a plaintiff must show "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may

be fairly treated as that of the state itself." Okunieff v. Rosenberg, 996 F.Supp. 343, 349 (S.D.N.Y. 1998)(quotations ommitted). A close nexus may also be demonstrated by a showing that the State has insinuated itself into a position of interdependence with the private party to such a degree that the State and private party are acting as "joint participants." Mitchell v. Home, 377 F.Supp.2d 361, 370 (S.D.N.Y. 2005). To establish state action under the "state compulsion" test, a plaintiff must demonstrate that a state actor exercised coercive influence over a private actor, or provided significant encouragement, either overt or covert to a private actor such that the private actor's actions must be deemed to be the actions of the State. Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). To establish the existence of state action under the "public function" test, a plaintiff must demonstrate that the private actor was acting in an area that is "traditionally the exclusive prerogative of the State." Mitchell, 377 F.Supp.2d at 370 (citing Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982).

In the instant case, plaintiff has failed to establish that the Out Front defendants were State actors under the "public function test" because plaintiff has failed to demonstrate that those defendants were acting in an area that is traditionally the province of the State. Organizing and implementing the display of large fiberglass animal sculptures throughout a metropolitan area is not traditionally the exclusive prerogative of the State, and

therefore plaintiff cannot establish that the Out Front defendants are state actors under the "public function" test.

Similarly, plaintiff has failed to establish that any state actor exerted coercive influence over the Out Front defendants, or significantly encouraged those defendants to act in any particular manner such that Out Front's actions could only be considered to be State action.  The uncontroverted evidence demonstrates that neither the City of Rochester nor Caulkins played any role in the approval or disapproval of the PETA design.  Nor did the City defendants play any role in the decision to place the PETA Elephant at the War Memorial, or the subsequent decision to place the sculpture in Farmington, New York.  With respect to the timing of the placement of the PETA Elephant, the City defendants played only a minor role in informing the Out Front defendants that because access to the War Memorial was closed during the week of May 5, 2003, the sculpture, along with the other five animal sculptures, could not be positioned there until May 13 or later.  This role was <u>de</u> <u>minimus</u>, and therefore, plaintiff has failed to establish that the Out Front defendants were coerced or encouraged by any State actor to such an extent that the Out Front defendants' actions could be considered State action.

Finally, plaintiff has failed to establish that there was a "close nexus" between the Out Front defendants and any state actor.  As stated above, Jacobsen was the sole decision maker with respect to where the Animal Scramble animals would be located, and what

designs would be approved. No State actor played any role in those decisions. Moreover, the Animal Scramble was organized and operated by a private entity (Out Front), and most of the sculptures in the Animal Scramble were placed on private property. The mere fact that the City of Rochester granted space on its property at the War Memorial for the display of six animal sculptures does not transform Out Front's private venture into a joint enterprise with the government. Because plaintiff has failed to demonstrate any joint undertaking by the City of Rochester and the Out Front defendants, plaintiff has failed to establish the presence of State action under the "close nexus" test.

Plaintiff contends that the three tests discussed above are inapposite because Jacobsen and Out Front acted as agents for the City of Rochester, and therefore they were State actors. In support of this argument, PETA claims that the City of Rochester delegated authority to Jacobsen to choose which animals would be placed at the War Memorial, and therefore, he was acting on behalf of the Government when he attempted to prevent the PETA Elephant from being placed at the War Memorial. This argument, however, is contrary to both the facts of the case and the law. Just as the issuance of a parade permit by a municipality generally does not render the parade organizers agents of the municipality, see Gay Veterans Ass'n Inc. v. The American Legion-New York County Org., 621 F.Supp. 1510, 1516 (S.D.N.Y. 1985)(parade organizers who were issued permit were not acting under color of State law in refusing

gay rights group's request to participate), a municipality's grant of permission to a private organization of the right to use public space for the display of sculptures does not render that organization an agent of the municipality.

With respect to the facts, it is clear from the record that the City of Rochester, through Caulkins, merely granted to Out Front the permission to use five available spaces for the exhibition of the fiberglass animal sculptures. There is no evidence in the record that the City or Caulkins retained any authority over which sculptures would be placed there, or that the City placed any content-based restrictions on the selection of sculptures to be displayed at that location. Accordingly, because the City of Rochester did not "delegate" any authority to Out Front when it granted Out Front permission to use space at the War Memorial, the Out Front defendants can not be considered agents of the City or Caulkins, and therefore they are not State Actors.

    B.    Plaintiff has failed to establish that the City <u>defendants violated its Constitutional Rights</u>.

    1.    The City defendants played no role in the approval of the design of the PETA Elephant, and played no role in the <u>assignment of a location for the sculpture</u>.

It is undisputed that the Animal Scramble was a privately run event. It is further undisputed that Howie Jacobsen was the only party responsible for approving or rejecting the proposed designs for the animals, and that he was the sole person responsible for assigning the locations of the animals. Accordingly, with respect to the determination of where the PETA Elephant would be placed,

and whether or not the PETA design was acceptable, plaintiff has failed to allege that the City defendants violated its constitutional rights.

    2.   Plaintiff has Failed to Establish a Violation of its <u>Right to Due Process</u>.

Plaintiff has further failed to establish that the delay of between two and eight days in getting its elephant placed at its chosen location violated its constitutional rights. To state a claim for violation of its Due Process rights with respect to the delay of the placement of its Elephant, plaintiff would have to establish that it had a constitutionally cognizable property interest in having its Elephant displayed at a location of its choosing at a particular time. <u>See</u> <u>Harlen Associates v. Incorporated Village of Mineola</u>, 273 F.3d 494, 503 (2nd Cir. 2001) (to state a claim for a violation of property rights without due process of law, plaintiff must establish that: (1) he had a valid property interest, and (2) that the defendant infringed upon that property interest in an arbitrary way). Plaintiff, however, has failed to establish any basis for finding that it had a property right in having its sculpture displayed at the location of its choosing at the time of its choosing, and accordingly, it can not state a claim for the violation of any constitutionally-protected right to due process.

3.  Plaintiff has Failed to Establish a Violation of its <u>Right to Equal Protection</u>.

Similarly, plaintiff has failed to establish that the delay in the placement of the PETA Elephant violated its rights to equal protection under the Constitution. To state a claim for the denial of equal protection, a plaintiff must allege that a governmental agency has treated similarly situated persons differently under the law. <u>Reynolds v. Sims</u>, 377 U.S. 533 (1964). In the instant case, however, it is uncontroverted that none of the six sculptures scheduled to be displayed at the War Memorial were installed until May 13, 2003. Accordingly, plaintiff has failed to demonstrate that the City treated PETA any differently than the other Animal Scramble sponsors with respect to the timing of the placement of the sculptures. The fact that other sculptures in the Animal Scramble may have been installed at other locations during the week of May 5, 2003 does not establish that the City of Rochester treated PETA differently than other sponsors as the City was not responsible for the installation of the sculptures, and played no role in the organization or operation of the Animal Scramble.

4.  Plaintiff has Failed to Establish a Violation of its <u>Right to Freedom of Speech</u>.

Finally, plaintiff has failed to establish that its First Amendment rights were violated by the two to eight delay in the placement of its Elephant at the War Memorial. To state a claim for a violation of its First Amendment rights to freedom of speech, plaintiffs would have to establish that absent a legitimate reason,

a governmental entity, or a party cloaked with governmental power, restricted or attempted to restrict speech based on its content. See Peck ex rel, Peck v. Baldwinsville Central School District, 426 F.3d 617, 626 (2nd Cir. 2005). In the instant case however, the evidence demonstrates that the City of Rochester had a legitimate reason for not allowing Out Front to place any of the Animal Scramble animals at the War Memorial during the week of May 5, 2003. Specifically, access to the area where the sculptures were to be located was prohibited due to the use of that area by the circus from May 6 through May 12. Moreover, there is no evidence in the record to suggest that the City's failure to grant Out Front permission to install any of the animals was based on the content of any message conveyed by the sculptures to be placed there. Finally, PETA has failed to establish that it had a constitutional right to have its Elephant placed at the War Memorial prior to the arrival of the circus. Neither the City nor Out Front made any promise to the PETA that its elephant would be placed at the War Memorial prior to the arrival of the circus, and while Out Front had scheduled placement of the Animal Scramble animals in and around Rochester for the week of May 5, 2003 (comprising the days from Monday, May 5, 2003 through Sunday, May 11, 2003) Out Front specifically advised all of the sponsors that those dates were subject to change. Because plaintiff can not establish that any of its constitutional rights were violated by the placement of its Elephant at the War Memorial on May 13, 2003 as opposed to any

earlier date that it would have preferred, I find that plaintiff has failed to establish any of its constitutional claims against the City defendants.  Additionally, because I find that plaintiff has failed to establish that the City violated its Constitutional rights, I find that the plaintiff has failed to establish the existence of a conspiracy to violate its civil rights.

    II.   <u>Plaintiff's State Law Claims</u>

Plaintiff alleges that the defendants breached contractual agreements with the PETA, and that the defendants engaged in deceptive business practices under New York State statutory law. Defendants move for summary judgment on these claims on grounds that plaintiff has failed to establish any breach of contract, and that the defendants have not, as a matter of law, engaged in deceptive business practices.  For the reasons set forth below, I grant defendants' motions for summary judgment.

    A.   <u>Breach of Contract Claims</u>

Plaintiff claims that defendants City of Rochester and Out Front breached a contract with the plaintiffs by denying PETA Access to the War Memorial Arena for the display of its elephant sculpture.  "To establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." <u>National Market Share, Inc. v. Sterling Nat. Bank</u>, 392 F.3d 520, 525 (2nd Cir. 2004).  In the instant case, plaintiff has failed to allege the existence of a contract between

it and the City of Rochester, and accordingly, I dismiss plaintiff's contract claims against the City. With respect to the Out Front defendants, plaintiff has failed to that it was damaged as a result of the defendant's alleged breach of the provision that exhibition spaces would be allocated on a first-come first-serve basis. Even if the defendants did breach that provision, plaintiff has failed to establish that is was damaged as a result the breach, on grounds that the plaintiff received its first choice of exhibition spaces: the War Memorial. Because plaintiff has failed to establish that it was damaged as a result of the defendant's alleged breach of contract, I grant defendants' motions for summary judgment, and dismiss plaintiff's breach of contract claims.

    B.   <u>New York State Business Law Claims</u>

PETA claims that the defendants violated Section 349 of the New York Business law by engaging in a deceptive business practice with respect to the Animal Scramble. Specifically, plaintiff contends that Out Front's representation that the allocation of exhibition spaces would be made on a first-come first-serve basis was false and misleading.

I find plaintiff's claims under the New York State Business Law to be without merit. Initially, I note that although this claim was brought against all defendants, there is no allegation that the City of Rochester or Caulkins engaged in any deceptive business practice, and accordingly, plaintiff's claim is dismissed as to those defendants. With respect to the Out Front defendants,

to establish a violation of section 349 of the General Business Law, PETA must establish "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000).  In the instant case, plaintiff has failed to establish that it suffered any injury as a result of the defendants' allegedly deceptive practice.  PETA's elephant sculpture was displayed at the location of its choosing, and accordingly, it can not establish that it was damaged as a result of the defendants' allegedly deceptive practice.

## CONCLUSION

For the reasons set forth above, the defendants' motions for summary judgment are granted, plaintiff's motion for summary judgment is denied.  Moreover, because this decision resolves all issues between the parties, including the City of Rochester, the plaintiff's complaint is dismissed as to all defendants with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         March 29, 2006